CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JUN 19 2017
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

NANCY PETERSON, CONSERVATOR )
FOR MADAYLYN PETERSON, )
                                                 )    Civil Action No. 3:16CV00026
     Plaintiff,                    )
                                                 )    **MEMORANDUM OPINION**
v.                                   )
                                                 )    Hon. Glen E. Conrad
KEVIN LEONARD PADDY,       )    Chief United States District Judge
                                                 )
     Defendant.               )

Plaintiff Nancy Peterson, as conservator for Madalyn Peterson ("Madalyn"), filed this diversity action again Kevin Leonard Paddy, Madalyn's biological father, asserting claims of assault and battery and intentional infliction of emotional distress. Unbeknownst to the plaintiff, Paddy moved from Gordonsville, Virginia to Suwanee, Georgia several months before the action was filed. Peterson has now moved to transfer venue under 28 U.S.C. § 1406(a). The motion has been fully briefed and is ripe for disposition. For the reasons set forth below, the court will grant the motion and transfer the case to the United States District Court for the Northern District of Georgia, Atlanta Division.

### Background

Madalyn was born to Peterson and Paddy in August of 1994. At that time, Peterson and Paddy resided in Twentynine Palms, California, where Paddy was serving as a lance corporal in the United States Marine Corps. In September of 1994, Madalyn suffered multiple injuries, including skull fractures, while in Paddy's care. In January of 1995, a general court-martial convicted Paddy of assaulting Madalyn. As a result, Paddy was sentenced to 18 months' imprisonment, had his military rank reduced, and was dishonorably discharged from the Marines.

Peterson claims that Madalyn is permanently disabled as a result of the injuries that she sustained as an infant, and that she is incapable of caring for her property or transacting business. In September of 2012, Peterson was appointed as Madalyn's conservator by a probate court in the State of Connecticut, where Peterson now resides. The conservatorship has been renewed by the probate court on multiple occasions, most recently on April 19, 2017.

Peterson filed the instant action against Paddy on April 12, 2016. At that time, Peterson believed that Paddy was still residing in Gordonsville, Virginia. Peterson alleged in the complaint that Paddy "is an individual and resident of Louisa County, Virginia, residing at 9 Laurel Oak Ct, Gordonsville, VA 22942." Compl. ¶ 8, Docket No. 1. Peterson further alleged that "[v]enue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)," since "the Defendant resides in Louisa County, Virginia, which falls within the jurisdiction of this court." Id. at ¶ 10.

Peterson's efforts to serve Paddy at the address in Gordonsville were unsuccessful. The address is in a gated community. On May 21, 2016, the process server "spoke with security," and was advised that Paddy "works out of town." Affid. of Due Diligence, Docket No. 7. The process server was further advised that "at one point the house was for sale" but Paddy "is still the owner." Id. On May 23, 2016, a man who answered the door to the house in Gordonsville advised the process server that he was renting the house from Paddy, and that Paddy may be in Georgia.

Peterson subsequently subpoenaed payroll records from Peterson's employer. The payroll records list Paddy's address as 1270 Water View Lane, Suwanee, Georgia 30024. The records also indicate that Paddy's filing status for state income tax purposes is "GA, Single, 1," and that Georgia income taxes have been withheld from Paddy's paychecks. Personal and Check Information, Docket No. 7.

Peterson subsequently served Paddy at the address in Georgia. On September 27, 2016, Paddy filed an answer to the complaint. In his answer, Paddy denied that he is a resident of Louisa County, Virginia. See Answer ¶ 7 ("In response to the allegations set forth in paragraph 8, the allegations are denied and strict proof is demanded thereof."). He also denied that venue is proper in this district. Id. at ¶ 8 ("In response to the allegations set forth in paragraphs 9 and 10, the allegations are denied and strict proof is demanded thereof."). However, he never filed a motion to dismiss or transfer on that basis.

On April 17, 2017, Paddy moved for summary judgment on the ground that Virginia's statutes of limitations govern and bar the plaintiff's claims. In his brief in support of the motion, Paddy confirmed that he "now resides in Georgia." Br. in Supp. of Mot. to Dismiss and for Summ. J. 1, Docket No. 17.

In response, Peterson argued that the court should employ the statutes of limitations of California, where the alleged wrong occurred, or Georgia, where Peterson now resides, and that her claims would be deemed timely under the applicable statutes in either state. In the alternative, Peterson requested that the court transfer the case to California or Georgia.

Thereafter, Peterson filed the instant motion to transfer venue under 28 U.S.C. § 1406(a). Peterson argues that venue is improper in this district, since Paddy does not reside in Virginia and the acts complained of did not occur in this state.

On May 25, 2017, Paddy filed a brief in opposition to the motion. Contrary to his answer, in which he affirmatively denied that venue is proper in this district, Paddy now maintains that he is still a domiciliary of Virginia, and that "venue . . . properly lies in the Western District of Virginia." Def.'s Br. in Opp'n 3, Docket No. 26. In an accompanying affidavit, Paddy states that he "believe[s] it likely that [he] will return to Virginia in approximately 3-4 years," after his

3

girlfriend's youngest child graduates from high school. Paddy Affid. ¶ 9, Docket No. 26. Paddy also indicates that he still owns the residence in Louisa County, Virginia that is currently being rented, that he owns no real property in Georgia, that he returns to Virginia once a month for work obligations and frequently for social gatherings, and that he considers Virginia to be his home state.

On June 2, 2017, Peterson filed a reply brief, along with additional evidence in support of the pending motion to transfer. The additional evidence includes voter records from the State of Georgia, which indicate that Paddy registered to vote in that state on January 20, 2016, and that his voter registration remains active.

## Discussion

Peterson's motion to transfer venue is brought pursuant to 28 U.S.C. § 1406(a). Under this statute, if a case is brought in a district where venue is "wrong," the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The provision therefore authorizes dismissal or transfer only when venue is "wrong" in the forum in which the action was filed.

"This question – whether venue is 'wrong' or 'improper' – is generally governed by 28 U.S.C. § 1391." Alt. Marine Constr. Co. v. United States Dist. Court, 134 S. Ct. 568, 577 (2013). That provision states that "[a] civil action may be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. §1391(b). Thus, when venue is challenged

4

under § 1406(a), "the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper and the case must be dismissed or transferred[.]" Atl. Marine, 134 S. Ct. at 577.

In this case, it is undisputed that none of the acts giving rise to Peterson's claims occurred in Virginia, and thus that this district is not the proper venue under § 1391(b)(2). Instead, the parties dispute whether Paddy "resides" in this district or a district in Georgia, for purposes of § 1391(b)(1).

Section 1391(c) provides that, for venue purposes, an individual is "deemed to reside in the judicial district in which that person is domiciled." 28 U.S.C. § 1391(c). Establishing domicile "requires physical presence, coupled with an intent to make the State a home." Johnson v. Advance Am., 549 F.3d 932, 937 n.2 (4th Cir. 2008). Although an individual can have only one domicile at a time, he "may change his domicile 'instantly by taking up residence in another state with the intent to remain there. He need not intend to remain permanently at his new domicile; it is enough that he intends to make the new state his home and that he has no present intention of going elsewhere.'" Segen v. Buchanan Gen. Hosp., Inc., 552 F. Supp. 2d 579, 583 (W.D. Va. 2007) (Williams, J.) (quoting Gambelli v. United States, 904 F. Supp. 494, 497 (E.D. Va. 1995)).

In determining where an individual "resides" for venue purposes, "courts consider the same factors . . . as they do in determining [his] citizenship for purposes of diversity of citizenship." Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3805 (4th ed. 2017). Such factors include, but are not limited to, the individual's "current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; [and] payment of taxes."

Bloom v. Library Corp., 112 F. Supp. 3d 498, 502 (N.D. W. Va. 2015); see also UDX, LLC v. Heavner, 533 B.R. 511, 515 (M.D.N.C. 2015) (listing the same factors). "Courts determine a party's domicile on a case by case basis, considering all of the circumstances surrounding an individual's situation." Bloom, 112 F. Supp. 3d at 502. While no single factor is determinative, some factors carry more weight than others. Id. "For instance, the state in which an individual is registered to vote raises a presumption that the individual is a citizen of that state." Hall v. Nestman, No. 5:14-cv-00062, 2015 U.S. Dist. LEXIS 83728, at *12 (W.D. Va. June 29, 2015) (Urbanski, J.) (internal citation omitted); see also Bloom, 112 F. Supp. 3d at 503 (emphasizing that "courts have found a party's voter registration . . . to be of particular importance") (internal citations omitted). Furthermore, a party's own statements of his intended domicile are "not conclusive" and are "entitled to little weight when in conflict with the facts." Webb v. Nolan, 361 F. Supp. 418, 421 (M.D.N.C. 1972), aff'd, 484 F.2d 1049 (4th Cir. 1973); see also Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1342 (11th Cir. 2011) ("Courts generally give little weight to a party's profession of domicile . . . because these declarations are often self-serving.").

Upon review of the record, the court concludes that such conflict exists in this case. According to Paddy's declaration, he has been residing in Georgia since December of 2015, before the instant action was filed, and he intends to remain there for the next several years. Peterson's payroll records have been updated to reflect his Georgia address, and Georgia income taxes have been withheld from Peterson's paychecks. Additionally, and perhaps most importantly, Peterson is registered to vote in Georgia, which raises a presumption that he is a citizen of that state. Hall, 2015 U.S. Dist. LEXIS 83728, at *12; see also Griffin v. Matthews, 310 F. Supp. 341, 343 (M.D.N.C. 1969). Even without such presumption, however, Peterson's voter registration would still carry considerable weight, especially in light of the applicable voter requirements. See, e.g.,

6

Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 12 (1st Cir. 1991) (observing, based on the applicable New Hampshire statute, that the court "need establish no such presumption to agree that Lundquist's voting registration carries weight"). By statute, an individual is not eligible to vote in Georgia unless he is a "citizen of [Georgia] and of the United States," and a "resident of [Georgia] and of the county or municipality in which he . . . seeks to vote." Ga. Code Ann. § 21-2-216(a). For purposes of the state's voting requirements, "[t]he residence of any person shall be held to be in that place in which such person's habitation is fixed, without any present intention of removing therefrom." Ga. Code Ann. § 21-2-217. Given these statutory provisions, Paddy's voter registration is "tantamount to a representation of [Georgia] domicile to voting officials," and constitutes "significant countervailing evidence of intent to remain" in Georgia. Lundquist, 946 F.2d at 12-13.

Based on the foregoing evidence, the court affords little weight to the subjective statements in Paddy's recent affidavit. Although there is some objective evidence to support the assertion that he remains a domiciliary of Virginia, including the fact that he continues to own a home in Louisa County, the greater weight of the evidence supports the plaintiff's position on this issue. In sum, given the specific circumstances presented in this case, and considering the evidence in its entirety, the court concludes that Paddy changed his domicile to Georgia before this action was filed, and that venue is therefore improper under § 1391(b)(1).

Rather than dismissing the case for improper venue, the court finds that the interest of justice would be served by transferring the case to a district in which it could have been brought initially. See 28 U.S.C. § 1406(a). In light of the court's conclusion that Paddy "resides" in Georgia for purposes of § 1391(b)(1), and since Georgia would be more convenient than

7

California for both sides, the court will exercise its discretion to transfer the case to the appropriate federal court in Georgia.

## Conclusion

For the reasons stated, the court will grant Peterson's motion to transfer venue. The case will be transferred to the United States District Court for the Northern District of Georgia, Atlanta Division. Each side is to bear its own costs, expenses, and attorneys' fees incurred herein to date. All other pending motions are left to the discretion of the transferee court.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 19th day of June, 2017.

_____
Chief United States District Judge